UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CAROL TANGO,** Individually and as §
Representative of the Estate and Heirs of §
Thomas G. Murphy, Deceased; **DEE ANNE** §
**EAGAN,** Individually and as Representative of §
the Estate and Heirs of Thomas G. Murphy, §
Deceased; **NORMAN MURPHY**; and §
**MICHAEL MURPHY,** §
　§
      Plaintiffs, §
　§
vs. §
　§
**AMERICAN CYANAMID COMPANY** *n/k/a* §
**WYETH HOLDINGS COPORATION,** §
a Maine Corporation; §
　§
**ASHLAND, INC.** (Individually and as §
successor-in-interest to Hercules Inc.), §
a Kentucky corporation. §
　§
**CHAMPLAIN CABLE CORPORATION** §
*f/k/a* **HERCULES, INC.,** (Individually and as §
successor-in-interest to Haveg Industries, Inc.), §
a Delaware Corporation; §
　§
**CYTEC INDUSTRIES, INC**. §
(individually and as successor-in-interest to §
AMERICAN CYANAMID COMPANY n/k/a §
WYETH HOLDINGS CORPORATION) §
　§
**HERCULES, INCORPORATED**, §
a Delaware Corporation; §
　§
**PFIZER, INC.,** (Individually and as successor- §
in-interest to WYETH HOLDINGS §
CORPORATION f/k/a American Cyanamid §
Company**),** §
a Delaware Corporation; §
　§
**RAPID-AMERICAN** §
**CORPORATION**, INDIVIDUALLY AND as §
successor in interest to Glen Alden Corporation §

successor in interest to Philip Carey                  §
Manufacturing Corporation,                             §
a Delaware Corporation;                                §
                                                       §
**ZURN INDUSTRIES, LLC** (Individually and             §
as successor-in-interest to Erie City Iron Works),     §
a Delaware corporation; and,                           §
                                                       §
**WYETH HOLDINGS CORPORATION** *f/k/a* §
**AMERICAN CYANAMID COMPANY**,                         §
a Maine Corporation,                                   §
                                                       §

     Defendants.

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Plaintiffs **CAROL TANGO,** Individually and as Representative of the Estate and Heirs of Thomas G. Murphy, Deceased; **DEE ANNE EAGAN,** Individually and as Representative of the Estate and Heirs of Thomas G. Murphy, Deceased; **NORMAN MURPHY**; and **MICHAEL MURPHY,** complaining of the Defendants listed below, and for cause of action would show the Court and Jury as follows:

### I.

### PARTIES

    1.    Plaintiff, **CAROL TANGO,** Individually and as Representative of the Estate and Heirs of Thomas G. Murphy, Deceased, is deemed a resident of Texas pursuant to 28 U.S.C. §1332 in that she is a legal representative of the Estate of Thomas G. Murphy, deceased who resided and died in Texas. Carol Tango is the daughter of Thomas G. Murphy, deceased and Independent Co-Executor of the Estate of Thomas G. Murphy, deceased. She lives in Torrance, California.

2. Plaintiff, **DEE ANNE EAGAN,** Individually and as Representative of the Estate and Heirs of Thomas G. Murphy, Deceased, is an individual residing in Irving, Texas. Dee Anne Egan, along with Carol Tango, is an Independent Co-Executor of the Estate of Thomas G. Murphy, deceased and independent co-executor of the Estate of Thomas G. Murphy, deceased.

3. Plaintiff, NORMAN MURPHY, is an individual residing in Charleston, South Carolina. Norman Murphy is the son of Thomas G. Murphy, deceased.

4. Plaintiff, MICHAEL MURPHY, is an individual residing in Grand Prairie, Texas. Michael Murphy is the son of Thomas G. Murphy, deceased.

5. **AMERICAN CYANAMID COMPANY** *n/k/a* **WYETH HOLDINGS CORPORATION** , is a Maine corporation and may be served with citation by serving its registered agent: CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201-4234. This Defendant is being sued as an Employer Defendant.

6. **ASHLAND, INC.** (Individually and as successor-in-interest to Hercules Inc.) is a Kentucky corporation and may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234. This Defendant is being sued as a Manufacturer Defendant.

7. **CHAMPLAIN CABLE CORPORATION** *f/k/a* **HERCULES, INC.,** (Individually and as successor-in-interest to Haveg Industries, Inc.), a Delaware corporation, has at all times relevant to this litigation conducted business in this State and while it is required o maintain a registered agent for service of process, is has not designated such an agency. Therefore, said corporation may be served with process

through its principal place of business, 175 Hercules Drive, Colchester, Vermont 05446. This Defendant is being sued as a Manufacturer Defendant.

8.     **CYTEC INDUSTRIES, INC.**, is a Delaware corporation, and may be served with process through its registered agent, C.T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234. This Defendant is being sued as an Employer Defendant.

9.     **HERCULES, INCORPORATED**, a Delaware Corporation, may be served with process through its registered agent, CT Corp System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234. This Defendant is being sued as a Manufacturer Defendant.

10.    **PFIZER, INC.,** (Individually and as successor-in-interest to WYETH HOLDINGS CORPORATION f/k/a American Cyanamid Company)**,** a Delaware corporation, may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Suite 2900,Dallas, Texas 75201-4234. This Defendant is being sued as an Employer Defendant.

11.    **RAPID-AMERICAN CORPORATION**, Individually and as successor-in-interest to Glen Alden Corporation as successor in interest to Philip Carey Manufacturing Corporation is a foreign corporation that is incorporated under the laws of the State of Delaware, with a principal place of business located at 530 5th Ave., New York City, NY 10036 and has at all times relevant to this litigation conducted business in the State of Texas or was licensed to do business in the State of Texas. Defendant, **Rapid American Corporation** may be served with process through its registered agent,

Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Wilmington, DE 19808. Defendant, This Defendant is being sued as a Manufacturer Defendant.

12. **WYETH HOLDINGS COPORATION** *f/k/a* **AMERICAN CYANAMID COMPANY**, a Maine corporation, may be served with process through its registered agent, C.T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201-4234. This Defendant is being sued as an Employer Defendant.

13. **ZURN INDUSTRIES, LLC** ( Individually and as successor-in-interest to Erie City Iron Works) a Delaware corporation, may be served with process through its registered agent, CT Corporation System 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201-4234. This Defendant is being sued as an Equipment Defendant.

## II.

### JURISDICTION AND VENUE

14. Plaintiffs are citizens of Texas and California. Defendants are foreign corporations organized under the laws of various states other than Texas. Defendants have done or are doing business in the State of Texas. A complete diversity of citizenship exists between Plaintiffs and Defendants as Plaintiffs are citizens of Texas, South Carolina, and California; the Plaintiffs' Decedent was a resident of Texas; and Defendants are foreign corporations; and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Defendants are doing business or have in the past done business in the Northern District of Texas. Thus, the Court has jurisdiction over Defendants pursuant to 28 U.S.C. §1332. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391.

15.     Asbestos cases filed in Federal Court are currently classified as "tag-along" cases which will be governed by multi-district litigation pending in the United States District Court for the Eastern District of Pennsylvania, Philadelphia Division.  The court in Philadelphia at this time controls jurisdiction of all asbestos cases being filed in the United States District Courts.

16.     Each and every allegation in this Petition is expressly made in the alternative to, as well as in addition to, every other allegation.

### III.

### BACKGROUND

17.     Thomas G. Murphy, ("Plaintiffs' Decedent") died on March 20, 2010 from malignant mesothelioma, a cancer of the lining of the lung caused by asbestos exposure.  Plaintiffs would show that Thomas G. Murphy was exposed to asbestos from 1959 to 1980 while he worked at the American Cyanamid plant in Fort Worth, Texas, located within Tarrant County, Texas.  While working at this facility as an employee of American Cyanamid, Plaintiffs' Decedent was exposed to asbestos and asbestos fibers designed, manufactured, supplied, maintained, used and sold by Defendants and placed into the stream of commerce by said Defendants which, as a result, caused Plaintiffs' Decedent, Thomas G. Murphy, to suffer from severe and grievous injuries to his respiratory system and body in general and which ultimately caused his death.

18.     During this time period, Plaintiffs' Decedent, Thomas G. Murphy, suffered repeated exposure to asbestos and asbestos-containing products designed, manufactured, sold, supplied, used and/or maintained by the defendants.

19.     Before and during Plaintiffs' Decedent's exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied, used and/or sold asbestos-containing products for use at, including but not limited to, the facility listed in Paragraph 22, where Plaintiffs Decedent was exposed to asbestos fibers and asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

20.     When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, lung cancer, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

21.     Each of the Defendants knew or should have known through industry and medical studies, the existence of which were unknown to Plaintiffs' Decedent, Thomas G. Murphy, of the health hazards inherent in the asbestos-containing products they were selling, distributing, installing, maintaining and/or using. Instead of warning Plaintiffs' Decedent and the general public about these dangers, Defendants ignored or actively concealed such information, or condoned such concealment, in order to continue to sell, use, distribute and/or maintain asbestos or asbestos-containing products and to avoid litigation by those who were injured from asbestos inhalation. Those Defendants who have engaged in intentional misconduct, fraud or concealment or conspiracy to defraud or conceal the dangers of asbestos-containing products are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence

or strict liability, identifies other forms of specified misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

22. As a direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos as described in Paragraph 22, Plaintiff contracted malignant mesothelioma and ultimately died from malignant mesothelioma.

23. Further, Plaintiffs would show, as more specifically set out below, that Plaintiffs' Decedent, Thomas G. Murphy, suffered injuries and death proximately caused by his exposure to asbestos-containing products designed, manufactured, sold, supplied and/or maintained by Defendants in that each exposure to such products caused or contributed to Plaintiffs' Decedent's injuries and death, Plaintiffs say that the doctrine of joint and several liability should be extended to apply to each Defendant herein.

24. Because of the latency period between exposure to asbestos and the onset of malignant mesothelioma, and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, Plaintiffs and Plaintiffs' Decedent only recently discovered Plaintiffs' Decedent's injuries.

## IV.

## COUNT ONE

## ALLEGATIONS AGAINST EQUIPMENT AND MANUFACTURING

## DEFENDANTS

25. Plaintiffs' Decedent, Thomas G. Murphy, deceased, was exposed to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products that were manufactured, designed, and distributed by the

Defendants **ASHLAND, INC.** (Individually and as successor-in-interest to Hercules Inc.);**CHAMPLAIN CABLE CORPORATION** *f/k/a* **HERCULES, INC.,** Individually and as successor-in-interest to Haveg Industries, Inc.); **HERCULES, INCORPORATED**; **RAPID-AMERICAN CORPORATION**, INDIVIDUALLY AND as sii to Glen Alden Corporation as sii to Philip Carey Manufacturing Corporation; and,

**ZURN INDUSTRIES, LLC** (Individually and as successor-in-interest to Erie City Iron Works), (collectively referred to as "Defendants") and their predecessors-in-interest for use as construction materials or machinery in industrial operations. Plaintiffs would show that the defective design and condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and machinery were in this defective condition at the time they were designed by or left the hands of Defendants. Plaintiffs would show that Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products. Plaintiffs would show that this market defect rendered such products and machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Defendants. Plaintiffs would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

26. The Defendants are or were engaged in the business of selling, manufacturing, producing, designing, and otherwise putting into the stream of commerce asbestos-containing products and machinery requiring or calling for asbestos or asbestos-

containing products, and these asbestos-containing products and machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed, and otherwise put into the stream of commerce, were a proximate and producing cause of the injuries and death of Plaintiffs' Decedent.

27.    Defendants knew that these asbestos-containing products and machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation or installation of the asbestos-containing products or operation, maintenance and repair of the machinery requiring or calling for the use of asbestos and asbestos-containing products.

28.    Plaintiffs' Decedent was unaware of the hazards and defects in the asbestos-containing products of the Defendants, which made them unsafe for purposes of manipulation or installation. Similarly, Plaintiffs' Decedent was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and asbestos-containing materials.

29.    During the periods that Plaintiffs' Decedent, Thomas G. Murphy, deceased, was exposed to the asbestos-containing products and machinery of the Defendants, these asbestos-containing products and machinery were being utilized in a manner, which was intended by Defendants.

30.    In the event that Plaintiffs are unable to identify each injurious exposure to asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products experience by Plaintiffs Decedent, Plaintiffs would show the Court that the Defendants named herein represent or represented a substantial

share of the relevant market of asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products at all times material to the cause of action. Consequently, each Defendant should be held jointly and severally liable under the doctrines of enterprise liability, market-share liability, concert of action and alternative liability, among others.

31.    The illness, disabilities and death of Plaintiffs' Decedent, Thomas G. Murphy, are a direct and proximate result of the negligence of each Defendant and its predecessor-in-interest in that said entities produced, designed, sold, and otherwise put into the stream of commerce asbestos and asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiffs' Decedent's health and well-being. Certain Defendants created hazardous and deadly conditions to which Plaintiffs' Decedent was exposed and which caused Plaintiffs' Decedent to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some, or all of the following respects, among others, same being the proximate cause of Plaintiffs' Decedent's illness, disabilities and death as well as the damages suffered by Plaintiffs:

      (a)    in failing to timely and adequately warn Plaintiffs' Decedant  of the dangerous characteristics and serious health hazards associated with exposure to asbestos and asbestos-containing products or machinery requiring or calling for the use of asbestos and asbestos-containing products;

(b)     in failing to provide Plaintiffs' Decedent with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiffs' Decedent from being harmed and disabled by exposure to asbestos and asbestos-containing products or machinery requiring or calling for the use of asbestos and asbestos-containing products;

(c)     in failing to place timely and adequate warnings on the containers of said asbestos and asbestos-containing products or machinery requiring or calling for the use of asbestos and asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and machinery;

(d)     in failing to take reasonable precautions or exercise reasonable care to publish, adopt, and enforce a safety plan and safe method of handling and installing asbestos and asbestos-containing products or utilizing the machinery requiring or calling for the use of asbestos and asbestos-containing products in a safe manner;

(e)     in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products or the machinery requiring or calling for the use of asbestos and asbestos-containing products;

(f)     in failing to properly design and manufacture asbestos and asbestos-containing products or machinery requiring or calling for the use of

asbestos and asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)     in failing to properly test said asbestos-containing products and machinery before they were released for consumer use; and

(h)     in failing to recall or remove from the stream of commerce said asbestos-containing products or machinery requiring or calling for the use of asbestos and asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products and machinery.

## V.

## COUNT TWO

## ALLEGATIONS AGAINST EMPLOYER DEFENDANT AMERICAN CYANAMID COMPANY n/k/a WYETH HOLDINGS CORPORTATION; WYETH HOLDINGS CORPORATION f/k/a AMERICAN CYANAMID COMPANY; PFIZER, INC. (individually and as successor to WYETH HOLDINGS CORPORATION f/k/a AMERICAN CYANAMID COMPANY; CYTEC INDUSTRIES, INC. (individually and as successor to AMERICAN CYANAMID COMPANY – n/k/a WYETH HOLDINGS CORPORATION)

32.     All of the allegations contained in the previous paragraphs are realleged.

33.     Defendants, **AMERICAN CYANAMID COMPANY n/k/a WYETH HOLDINGS CORPORTATION; WYETH HOLDINGS CORPORATION f/k/a AMERICAN CYANAMID COMPANY; PFIZER, INC. (individually and as successor to WYETH HOLDINGS CORPORATION f/k/a AMERICAN**

CYANAMID COMPANY; CYTEC INDUSTRIES, INC. (individually and as successor to AMERICAN CYANAMID COMPANY – n/k/a WYETH HOLDINGS CORPORATION) (hereinafter referred to collectively as "Defendant American Cyanamid"), was at all times relevant the employer of Plaintiffs' Decedent, Thomas G. Murphy, deceased.

34.    Plaintiffs would show that Defendant American Cyanamid was negligent, grossly negligent, and intentionally committed certain acts and omissions which created conditions at the workplace which were a proximate cause of Plaintiff's Decedent's mesothelioma and death resulting from exposure to asbestos.

35.    In particular, Plaintiffs would show that the Defendant American Cyanamid demonstrated such an entire want of care as to establish that its acts and omissions were the result of actual conscious indifference to Plaintiffs' Decedent's rights, safety and welfare and that such specific acts of negligence, gross negligence and intentional acts or omissions committed by the Defendant that proximately caused Plaintiffs' Decedent's injuries and death include:

    (a)    failure to provide safe equipment for Plaintiffs' Decedent to use;

    (b)    failure to provide adequate safety measures and protection against deadly and life threatening asbestos dust, all despite the fact that Defendant knew or should have known of the extreme risk of harm inherent to asbestos exposure;

    (c)    failure to adequately warn Plaintiffs' Decedent of the inherent dangers of asbestos contamination;

    (d)failure to provide Plaintiffs' Decedent a safe place to work by failing to maintain the ambient and environmental conditions of the plant in proper and safe

conditions;

(e)     failure to follow and adhere to various safety and environmental laws and regulations of the state of Texas and the United States governing asbestos and asbestos exposures in the work place.  Such failures constitute negligence per se and gross negligence;

(f)     failure to use an alternative material;

(g)     failure to monitor asbestos dust levels in the workplace;

(h)     creating dangerous conditions on its premises;

(i)     failure to keep its premises in a reasonably safe condition;

(j)     failure to provide a safe place to work;

(k)     failure to provide adequate safety equipment;

(l)     failure to give adequate warnings of the dangerous conditions on their premises;

(m)     such other acts or omissions of negligence, gross negligence and/or malice that may be proven at trial.

36.     Alternatively, Plaintiffs bring this action against Defendant American Cyanamid for gross neglect under the authority of the Constitution of the State of Texas, TEX. CONST. Art 16, sec 26; and the exception to the Worker's Compensation Statutes of the State of Texas, TEX. REV.  CIV. STAT. ANN. Art 8306, sec. 5, which has been codified as §408.001(b) of the Labor Code which allows a common law state claim to be brought outside of the Workman's Compensation Act.

37.     As a direct and proximate result of the aforementioned conduct of Defendant American Cyanamid, Plaintiffs Carol Tango, Michael Murphy and Norman

Murphy, the daughter and sons of Plaintiffs' Decedent, Thomas G. Murphy, have suffered and will continue to suffer the loss of the society, companionship, love, affection, support and care of Plaintiffs' Decedent, Thomas G. Murphy, deceased.

38.    As a direct and proximate result of the aforementioned conduct of Defendant American Cyanamid, Plaintiffs suffered damages in excess of $75,000, excluding interests and costs.

## VI.

## COUNT THREE

## CONSPIRACY ALLEGATIONS AGAINST ALL DEFENDANTS

39.    All of the allegations contained in the previous paragraphs are re-alleged herein.

40.    Plaintiffs further allege that Defendants or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves and with other entities to cause Plaintiffs' Decedent's injuries by exposing him to harmful and dangerous asbestos-containing products and machinery requiring or calling for asbestos-containing products.    Defendants and other entities further knowingly agreed, contrived, combined, confederated, and conspired to deprive Plaintiffs' Decedent of the opportunity of informed free choice as to whether to use said asbestos-containing products and machinery or to expose himself to said dangers.  Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products.

41.     In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)     for many decades, Defendants, individually, jointly, and in conspiracy with each other and other entities, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and machinery calling for the use of asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

(b)     despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other and other entities, fraudulently, willfully, and maliciously:

(1)     withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, lung cancer and other illnesses and diseases from Plaintiffs' Decedent who was using and being exposed to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos-containing products;

(2)     caused to be released, published, and disseminated medical and scientific data, literature and test reports containing

information and statements regarding the risks of asbestosis, cancer, lung cancer and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated, and misleading; and

(3)     distorted the results of medical examinations conducted upon Plaintiffs' Decedent and workers such as Plaintiffs' Decedent who were using asbestos-containing products and machinery requiring or calling for the use of asbestos and being exposed to the inhalation of asbestos dust and fibers by falsely stating or concealing the nature and extent of the harm to which Plaintiffs' Decedent and workers such as Plaintiffs' Decedent has suffered.

(c)     Other conspirators participating in the conspiracy, or in ongoing or subsequent conspiracies were (hereinafter called the "conspirators") member companies in the Quebec Asbestos Mining Association, the Asbestos Textile Institute, or the Industrial Hygiene Foundation.     Acting in concert, the conspirators fraudulently misrepresented to the public and public officials, *inter alia*, that asbestos did not cause cancer and that the disease asbestosis had no association with pleural and pulmonary cancer and affirmatively suppressed information concerning the carcinogenic and other adverse effects of asbestos exposure on the human respiratory and digestive systems.

(d)     In addition, Defendants contrived, combined, confederated, and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers such as Plaintiffs' Decedent from contracting asbestos disease or cancer.

(e)     In furtherance of said conspiracies, Defendants and their co-conspirators contributed to cause the establishment of a Threshold Limit Value for asbestos exposure,, and contributed to the maintenance of such Threshold Limit Value despite evidence that this supposed "safe" level of exposure to asbestos would not protect the health of workers such as Plaintiffs Decedent even if complied with.

(f)     As the direct and proximate result of the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce the Plaintiffs' Decedent to rely upon said false and fraudulent representations, omissions, and concealments to continue to expose themselves to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products and

machinery requiring or calling for the use of asbestos which caused the release of respirable asbestos fibers.

42.    Plaintiffs Decedent reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of their asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

43.    As a direct and proximate result of Plaintiffs Decedent's reliance on Defendants' false and fraudulent representations, omissions, and concealments Plaintiffs' Decedent, Thomas G. Murphy, deceased, sustained damages including injuries, illnesses, and disabilities and has been deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products.

## VII.

## COUNT FOUR

## GROSS NEGLIGENCE ALLEGATIONS AGAINST ALL DEFENDANTS\

44.    All of the allegations contained in the previous paragraphs are re-alleged herein.

45.    The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of gross negligence, intentional wrongful conduct or malice resulting in damages and injuries to the Plaintiffs' Decedent. Defendants' conduct was specifically intended by Defendants to cause substantial injury to Plaintiffs' Decedent, or was carried out by Defendants with a flagrant disregard for the

rights of others and with actual awareness on the part of Defendant that the conduct would, in reasonable probability, result in human deaths or great bodily harm. More specifically, Defendants and their predecessors-in-interest, consciously and deliberately engaged in oppression, fraud, willfulness, wantonness or malice with regard to the Plaintiff and should be held liable in punitive and exemplary damages to Plaintiffs.

## VIII.

### COUNT FIVE

### AIDING AND ABETTING ALLEGATIONS AGAINST ALL DEFENDANTS

46.     All of the allegations contained in the previous paragraphs are re-alleged herein.

47.     The actions of all Defendants aided, abetted, encouraged, induced or directed the negligent or intentional acts of each and every other Defendant.

48.     Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiffs' Decedent and Plaintiffs.

49.     The actions of each of the Defendants are a proximate cause of Plaintiffs Decedent's injuries. As a result, all Defendants are jointly liable for the damage caused by their combined actions.

## IX.

### COUNT SIX

### NEGLIGENCE PER SE ALLEGATIONS AGAINST ALL DEFENDANTS

50.     All of the allegations contained in the previous paragraphs are re-alleged herein.

51.     The actions of all Defendants also constituted negligence *per se*.

52.     Each Defendant violated federal and state regulations relating to asbestos exposure. Such violations constitute negligence *per se* or negligence as a matter of law. Further, each such violation resulted in dangerous and unlawful exposures to asbestos for Decedent.

53.     The negligence *per se* of each Defendant was a proximate cause of Decedent's injuries and death.

## X.

## COUNT SEVEN

## LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

54.     All of the allegations contained in the previous paragraphs are re-alleged herein.

55.     Plaintiffs bring this cause of action against all Defendants for the loss of consortium in the relationship between their father, Thomas G. Murphy, deceased, and Plaintiffs CAROL TANGO, NORMAN MURPHY and MICHAEL MURPHY. CAROL TANGO, NORMAN MURPHY and MICHAEL MURPHY have suffered damages, both past and future, as a result of the acts and omissions of the Defendants described herein. The physical injuries and death of Plaintiffs Decedent, Thomas G. Murhpy were a directly and proximately cause by the Defendants. The injuries and death of Plaintiffs' Decedent, Thomas G. Murphy, have detrimentally impaired the loos of love, companionship, comfort, affection, solace, and moral support that Plaintiffs once shared in their relationship with their father, causing CAROL TANGO, NORMAN MURPHY and MICHAEL MURPHY pain and suffering in the past and to which they will in all likelihood continue to suffer in the future.

## XI.

## <u>DAMAGES</u>

56.     All of the allegations contained in the previous paragraphs are re-alleged herein.

57.     The conduct of all Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related lung disease of Plaintiff, and of the following general and special damages including:

(a)     Damages to punish Defendants for proximately causing Plaintiffs' Decedent's untimely injuries and death;

(b)     The conscious physical pain and suffering and mental anguish sustained by Plaintiffs and Plaintiffs' Decedent;

(c)     The physical impairment suffered by Plaintiffs' Decedent, Thomas G. Murphy, deceased;

(d)     The disfigurement suffered by Plaintiffs' Decedent, Thomas G. Murphy, deceased;

(e)     Reasonable and necessary medical expenses incurred by Plaintiffs' Decedent, Thomas G. Murphy;

(f)     Reasonable funeral and burial expenses incurred by Plaintiff's Decedent's estate.

(g)     Plaintiffs' Decedent's lost earnings and net accumulations;

(h)     Plaintiffs' Decedent's mental anguish caused by the extraordinarily increased likelihood of developing (or the progression and/or recurrence of) asbestos-related cancer of the lungs, lung cancer, mesothelioma and

other cancers due to said exposure to products manufactured, sold, used, maintained and distributed by the named Defendants; and

(i)     Past and future loss of the companionship and society, care, maintenance service, support, advice, counsel and consortium which Plaintiffs would have received from the Plaintiffs' Decedent prior to his illness and disability cause by his exposure to asbestos;

(j)     The past and future mental anguish suffered by Plaintiffs' Decedent's heirs as a consequence of the death of Plaintiffs' Decedent, Thomas G. Murphy;

(k)     The past and future pecuniary loss and loss of inheritance suffered by Decedent's heirs as a consequence of the death of Decedent;

(l)     Plaintiff seeks punitive and exemplary damages; and

(m)     Any and all recoverable survival and wrongful death damages on behalf of all statutory beneficiaries of the Plaintiffs' Decedent.

58.     By their acts and omissions described herein, Defendants intentionally, knowingly, and recklessly caused serious bodily injury to Plaintiff within the meaning of Tex.Civ.Prac.& Rem. Code §41.008(c)(7) and Tex. Penal Code §22.04.

59.     Plaintiffs filed suit within two (2) years of the date of discovering Plaintiffs' Decedent's asbestos-related conditions or the existence of any asbestos-related causes of action.

60.     Plaintiffs discovered Plaintiff's Decedent's injury and its cause less than two years prior to the filing of this petition.

61. A medical report compliant with §90.00003(a)(1) of Tex.Civ.Prac. & Rem. Code is attached hereto as Exhibit "A."

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demands judgment against the Defendants, and each of them, jointly and severally, for general damages, for their costs expended herein, for interest on said judgment from the date this action accrued until paid, at the legal rate, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

## XII.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully Submitted,

DUBOSE LAW FIRM, PLLC

Ben K. DuBose
Texas Bar No. 00796488
5646 Milton Street, Suite 321
Dallas, TX 75206
(214) 389-8199
(214) 389-8399 Fax

and

**WATERS & KRAUS, LLP**
GEORGE TAUKARD
Pennsylvania Bar No. 91186
315 North Charles Street
Baltimore, MD 21201
(410) 528-1153
(410) 528-1006 Fax

Attorneys for Plaintiffs



**James A. Robb, MD**
**11613 Kensington Court**
**Boca Raton, FL 33428-2415**

**NAME: MURPHY, THOMAS G.**                                    **JAR #: TGM-10**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**EVALUATION SUMMARY PREPARED FOR DUBOSE LAW FIRM : 1/7/10**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I am an American Board of Pathology diplomat in Anatomic Pathology, Clinical Pathology, Dermatopathology, and Cytopathology with a 10 year recertification in Anatomic and Clinical Pathology beginning 1/1/2007. I have active, unrestricted medical licenses in good standing in California, Colorado, Florida, Georgia, Illinois, North Carolina and South Carolina.

The diagnosis of early or diffuse malignant mesothelioma is a very important diagnosis for both prognostic and legal reasons. The diagnosis should be made with the maximum confidence using the pertinent clinical information and the appropriate histological techniques, when necessary, on the available tissue.

**I am making the diagnosis of diffuse malignant mesothelioma of biphasic type of the right pleural cavity at greater than the 99% medical certainty level based upon the analyses and supporting references to the pathology literature listed below. The malignant neoplasm is, within biological variation and sampling limitations, similar in all submitted sections where the neoplasm is present. The inhalation of asbestos fibers by Mr. Murphy, within a reasonable degree of medical probability, caused his malignant mesothelioma.**

TISSUE EXAMINED: Morphological analysis was performed on slides S09-6662 and S09-7165 (right pleural biopsy and mass resection, respectively) from the Department of Pathology, Arlington Memorial Hospital and ProPath Services (attachment #1). The immunohistochemical (TTF-1, keratin, calretinin, WT-1) stains were reported.

## I. CLINICAL PRESENTATION

Mr. Murphy, age 77 at time of diagnosis on 10/12/09, had and/or developed progressive shortness of breath, right upper shoulder chest pain, significant weight loss, and recurrent bloody right pleural effusion with diffuse right pleural nodularity (attachments #1,2,3). Right sided pleural biopsy and mass resection were positive for a biphasic malignancy, which was diagnosed as a biphasic malignant mesothelioma by the diagnosing pathologists and ProPath Services (attachment #1). A talc pleurodesis was performed. Radiological studies of the chest and abdomen, as well as clinical evaluation, failed to reveal any primary or metastatic malignant process in the examined organs other than the primary malignancy in the right pleural cavity (attachment #3). The attending physicians concurred with the diagnosis of malignant mesothelioma. The malignant process persisted in the right pleural cavity. This is a classic clinical presentation of a malignant mesothelioma arising in the pleural space.

Mr. Murphy had exposure to asbestos fibers (a diagnosis of mesothelioma, without a history of therapeutic radiation to the right pleural cavity, and his exposure affidavit – attachment #4). He was

**References:**

1) McCaughey, Kannerstein, and Churg. Tumors and Pseudotumors of the Serous Membranes. Atlas of Tumor Pathology, Second Series, Fascicle 20. Armed Forces Institute of Pathology, 1985.
2) Battifora and McCaughey. Tumors of the Serosal Membranes. Atlas of Tumor Pathology, Third Series, Fascicle 15. Armed Forces Institute of Pathology, 1995.
3) Husain, Colby, Ordonez, et. al. Guidelines for Pathologic Diagnosis of Malignant Mesothelioma. A Consensus Statement from the International Mesothelioma Interest Group, Arch Pathol Lab Med. 2009;133:1317-1331.

## II. GROSS AND LIGHT MICROSCOPIC MORPHOLOGY

The poorly differentiated right pleural malignancy, which invades the connective tissue of the parietal pleura and chest wall, has both a minor papulosolid epithelial pattern and a major spindle cell (sarcomatous) component (biphasic), both with "rim pattern" cytoplasmic vacuoles. The nuclei have a relatively "uniform" atypia, which favors mesothelioma over the much rarer biphasic pseudomesotheliomatous adenocarcinoma. This pattern is strongly consistent with malignant biphasic mesothelioma of the pleural space.

**Reference:**   1) See AFIP references #I.1,2 (rim vacuoles, 1: pp. 62-63) above.
2) Dail & Hammar, Pulmonary Pathology, 2nd Ed., pp. 1503 &1534, 1994.

## III. IMMUNOHISTOCHEMISTRY (IHC)

**A. TTF-1**  This antibody stains adenocarcinomas with a cytoplasmic/nuclear pattern and is negative in mesotheliomas, although occasional although weak focal cytoplasmic staining may occur. This malignancy is reported to be negative for TTF-1.

**B. Keratin 5/6**  Malignant mesotheliomas are almost all positive and pseudomesotheliomatous adenocarcinomas are almost all negative for keratin 5/6 staining. This malignancy is reported to be positive for keratin 5/6 and typical for malignant mesothelioma.

**C. Calretinin**  This antibody stains mesotheliomas with a cytoplasmic/nuclear pattern and is negative in non-mesothelial pseudomesotheliomatous carcinomas, although occasional weak focal cytoplasmic staining may occur. This malignancy is reported to be positive for calretinin.

**D. D2-40**  This antibody stains most mesotheliomas in a predominately membrane pattern. Pseudomesotheliomatous adenocarcinomas are usually negative, but some may have focal staining. This malignancy is reported to be positive for D2-40.

**E. Wilms' Tumor Suppressor Gene Antigen (WT-1)**  This antibody usually stains mesotheliomas with a nuclear pattern and is usually negative in non-mesothelial pseudomesotheliomatous carcinomas, although occasional weak focal cytoplasmic staining may occur. This malignancy is reported to be positive for WT-1.

**References:**
1) McCaughey, WTE, Colby, TV, Battifora, H, Churg, A, Corson, JM, Greenberg, SD, Grimes, MM, Hammar, S, Roggli, VL, and Unni, KK, Diagnosis of Diffuse Malignant Mesothelioma: Experience of a US/Canadian Mesothelioma Panel, Mod Pathol 1991;4:342-353.
2) JA Robb, personal observations.
3) See AFIP reference #1.2 above.
4) Ordonez, NG, Immunohistochemical Diagnosis of Epithelioid Mesothelioma: An Update, Arch Pathol Lab Med. 2005;129:1407-14.
5) Dabbs, DJ, Diagnostic Immunohistochemistry, Churchill-Livingstone, New York, 2002.
6) Lyons-Boudreaux, V, Mody, DR, et. al., Cytologic Malignancy Versus Benignancy: How Useful Are the "Newer" Markers in Body Fluid Cytology?, Arch Pathol Lab Med, 2008;132:23-28.

## IV. FINAL DIAGNOSTIC SUMMARY TABLE SUPPORTING DIAGNOSIS OF MESOTHELIOMA IN THE RIGHT PLEURA

| | EXPECTED | | |
| **FINDING/RESULT** | **PSEUDOMESO ADCA** | **MESOTHELIOMA** | **MURPHY** |
|---|---|---|---|
| 1. INCIDENCE | APPROX. 1/YR ** | 1000/YR ** | |
| 2. MORPHOLOGY | GLANDULAR | MESOTHELIAL | MESOTHELIAL |
| 3. CYTOVACUOLES | SOLID PATTERN | RIM PATTERN | RIM PATTERN |
| 4. TTF-1 | POSITIVE | NEGATIVE/FOCAL | NEGATIVE |
| 5. D2-40 | NEGATIVE | POSITIVE | POSITIVE |
| 6. KERATIN 5/6 | NEGATIVE | POSITIVE | POSITIVE |
| 7. CALRETININ | NEGATIVE | POSITIVE | POSITIVE |
| 8. WT-1 | NEGATIVE | POSITIVE | POSITIVE |

** <1/600 = < 0.16% chance of being a pseudomesotheliomatous carcinoma/sarcoma

**CONCLUSION:** THE ABOVE TOTAL PROFILE SUPPORTS THE DIAGNOSIS OF MALIGNANT MESOTHELIOMA. THE PROBABILITY OF A PSEUDOMESOTHELIOMATOUS BIPHASIC ADENOCARCINOMA HAVING THIS PROFILE IS LESS THAN 1% **.

Date Completed: 1/7/10                    James A. Robb, M.D.



## Texas Health
### Arlington Memorial Hospital

J. TRACE WORRELL, M.D.
PATHOLOGIST

JAMES E. HELGESON, M.D.
PATHOLOGIST

P. TIMOTHY SULLIVAN, D.O.
PATHOLOGIST

JAMES J. SMITH, M.D.
PATHOLOGIST

800 WEST RANDOL MILL ROAD    ARLINGTON, TEXAS 76012
### SURGICAL PATHOLOGY REPORT

Smith, James J.
11/11/09  1119

WHITNEY A. LACHAR, M.D.
PATHOLOGIST

J.M. GILBERT, M.D.
PATHOLOGIST

DUDLEY D. JONES, M.D.
PATHOLOGIST

PAGE 1

```
Name    :MURPHY,THOMAS G              DOB:12/10/31
Acc#/MR#:V00018710855/M000687303     Age:77
Location:RAD-CT                      Sex:M
Att Phy :Plump,David H

Surgeon :Plump,David H
Case No :S09-6662                    Date of Surgery:10/12/09
                                     Received Date  :10/12/09
                                     Completed      :10/13/09
```

### CLINICAL HISTORY

RIGHT LUNG MASS 12 cm, SMOKER, WEIGHT LOSS

### GROSS DESCRIPTION

Received in formalin labeled "RLL lung mass biopsy" are five needle biopsies of tan tissue that each measure 0.1 cm in diameter and that range from 1.3-1.7 cm in length. The entire specimen is submitted in a single cassette.

JJS:jp 10/12/09

### MICROSCOPIC DESCRIPTION

Examination reveals multiple core biopsies of a tumor that is characterized by a cellular, haphazard proliferation of fairly uniform spindle cells, associated with dilated, staghorn-type vascular structures and areas of edema. The spindle cells in general have a scant amount of tapered eosinophilic cytoplasm and ovoid nuclei that are mildly enlarged and pleomorphic, with fairly smooth nuclear membranes, evenly stained chromatin, and absent to inconspicuous nucleoli. No epithelial component or inflammatory component is identified. Rare mitotic figures are seen after extensive examination.

### COMMENTS

Based on morphology alone, this tumor is most likely a solitary fibrous tumor, monophasic synovial sarcoma, or hemangiopericytoma. Other spindle cell tumors such as spindle cell carcinoid, spindle cell carcinoma, and inflammatory myofibroblastic tumor are much less likely. This case will be submitted for external consultation with immunohistochemical

Patient: MURPHY, THOMAS G



## Texas Health
### Arlington Memorial Hospital

J. TRACE WORRELL, M.D.
PATHOLOGIST

JAMES E. HELGESON, M.D.
PATHOLOGIST

P. TIMOTHY SULLIVAN, D.O.
PATHOLOGIST

JAMES I. SMITH, M.D.
PATHOLOGIST

WHITNEY A. LACHAR, M.D.
PATHOLOGIST

J.M. GILBERT, M.D.
PATHOLOGIST

DUDLEY D. JONES, M.D.
PATHOLOGIST

800 WEST RANDOL MILL ROAD      ARLINGTON, TEXAS 76012
### SURGICAL PATHOLOGY REPORT

Smith, James J.
11/11/09   1119

PAGE 2

Patient: MURPHY, THOMAS G
Specimen: S09-6662

V00018710855
Received: 10/12/09

(Continued)
(Continued)

---

**COMMENTS**                    (Continued)

studies.  A separate report from ProPath Laboratory and an addendum will follow.

**PATHOLOGIC DIAGNOSIS**

Right lung, lower lobe mass; CT-guided biopsy:
    SPINDLE CELL NEOPLASM (PRELIMINARY DIAGNOSIS, PENDING EXTERNAL CONSULTATION WITH
    IMMUNOHISTOCHEMICAL STUDIES). SEE COMMENT.

JJS:jp D&T 10/13/09

        Dictated by: Smith, James J.

Patient: MURPHY, THOMAS G



# Texas Health
## Arlington Memorial Hospital

J. TRACE WORRELL, M.D.
    PATHOLOGIST

JAMES E. HELGESON, M.D.
    PATHOLOGIST

P. TIMOTHY SULLIVAN, D.O.
    PATHOLOGIST

JAMES J. SMITH, M.D.
    PATHOLOGIST

800 WEST RANDOL MILL ROAD      ARLINGTON, TEXAS 76012
### SURGICAL PATHOLOGY REPORT

Smith, James J.
11/11/09   1119

WHITNEY A. LACHAR, M.D.
    PATHOLOGIST

J.M. GILBERT, M.D.
    PATHOLOGIST

DUDLEY D. JONES, M.D.
    PATHOLOGIST

PAGE 3

Patient: MURPHY, THOMAS G
Specimen: S09-6662

V00018710855
Received: 10/12/09

(Continued)
(Continued)

---

## ADDENDUM REPORT

### Addendum # 1

This addendum is issued to report results of external consultation with immunohistochemical studies, refining the preliminary diagnosis. The consultants diagnosis is as follows: "SARCOMATOID MESOTHELIOMA." The comment further states, "The immunophenotypic findings provide strong evidence to support the interpretation of this spindle cell neoplasm as mesothelioma, reflected in the reactivity in the neoplastic cells with cytokeratins and the mesothelium-related markers, calretinin, WT1, and (focally) D2-40. Because of the similar morphologic and immunophenotypic characteristics with synovial sarcoma, fluorescence in situ hybridization (FISH) was performed in order to detect SYT gene rearrangement. No such gene rearrangement was found." Please see report CM09-2659 from ProPath Laboratory for full details.

## ADDENDUM DIAGNOSIS

### Addendum # 1

Right lung, lower lobe mass, CT-guided biopsy:
    SARCOMATOID MESOTHELIOMA. SEE ADDENDUM REPORT SECTION.

JJS:jp D&T 10/28/09

    Dictated by: Smith, James J.

Addendum Signed _____   Smith, James J. 10/28/09

Signed _____(signature on file)_____   Smith, James J. 10/13/09

Patient: MURPHY, THOMAS G

# PROPATH

V 19710855 (ID)

## Immunohistochemistry Division   M 677303

11/3/09

## PATHOLOGY CONSULTATION

| | |
|---|---|
| Patient Name: **MURPHY, THOMAS G.** | Accession #: **CM09-2659** |
| DOB: 12/10/1931 (Age: 77)   Gender: M | Taken: 10/12/2009 |
| | Received: 10/22/2009 |
| Physician: James E. Helgeson, M.D. | Reported: 10/28/2009 |
| Account: THC-Arlington Memorial Hosp- G32341 | Requisition #: PI |
| 800 West Randol Mill Road | Soc. Sec. #: 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 |
| Arlington, TX 76012 | |

## Material Submitted For Examination
1 H&E slide S09-6662 LEV3; 1 paraffin block S09x6662; 1 report S09-6662.
Two H&E recuts from block S09x6662 are retained for ProPath files. All other material (including any blocks or slides submitted) is returned along with the immunostains.

## Clinical Information
The patient is a 77-year-old male with a history of smoking and weight loss, who is found to have a 12 cm right lower lobe lung mass. Core needle biopsy was performed on 10/12/2009, and histopathologic examination revealed a spindle cell neoplasm. Please perform immunohistochemical stains to assist in classification.

## Final Diagnosis
**Tissue from core needle biopsy of lower lobe of right lung for immunophenotyping**
(outside block "S09x6662" and slide "S09-6662 LEV3", collected on 10/12/2009):

### -- Sarcomatoid mesothelioma.

## Comment
The immunophenotypic findings provide strong evidence to support the interpretation of this spindle cell neoplasm as mesothelioma, reflected in the reactivity in the neoplastic cells with cytokeratins and the mesothelium-related markers, calretinin, WT1, and (focally) D2-40. Because of similar morphologic and immunophenotypic characteristics with synovial sarcoma, fluorescence in situ hybridization (FISH) was performed in order to detect *SYT* gene rearrangement. No such gene rearrangement was found.

I have shown this case to my colleagues, each of whom agrees with the above diagnosis. Thank you for allowing us to study this challenging case.

db/10/28/2009          *Physician Inquiries: 214-237-1636*

\*\*\*Electronically Signed Out\*\*\*
Cary J. Buresh, MD



H&E, 200x



H&E, 400x

MURPHY, THOMAS G.

PATHOLOGY CONSULTATION


Cytokeratin LMW, 400x


Calretinin, 400x


WT1, 400x


D2-40, 400x


TTF-1, 400x


CD34, 400x


Smooth muscle actin, 400x


TLE-1, 400x

MURPHY, THOMAS G.

ProPath Services, LLP · 8267 Elmbrook Drive, Suite 100 · Dallas, TX 75247
(214) 638-2000 or (800) 258-1253 · Fax: (214) 237-1731
www.propath.com · cary.buresh@propath.com

Page 2 of 4

MURPHY, THOMAS G.

PATHOLOGY CONSULTATION



Ki-67, 400x



SYT FISH

## Microscopic Description

The H&E sections consist of core needle biopsy segments of a spindle cell tumor showing variable cellularity (some areas are highly cellular) and conspicuous thin-walled vessels. The neoplastic cells have small to moderate amounts of eosinophilic cytoplasm and ovoid to elongated nuclei with evenly distributed, dark chromatin and rare mitotic figures.

As requested, immunohistochemical stains are performed on additional sections cut from the submitted paraffin block, to attempt to characterize this tumor. Results in the neoplastic cells are as follows:

| | |
|---|---|
| Cytokeratin LMW (8, 18) | POSITIVE |
| Cytokeratin HMW (34βE12) | Few positive cells |
| Cytokeratin 5 | Negative |
| p63 | Negative (rare positive cells – nuclear staining) |
| Cytokeratin 7 | Negative |
| TTF-1 | Negative |
| PAX-8 | POSITIVE (nuclear staining) |
| EMA | Few positive cells |
| S100 | Negative |
| Sox10 | Negative |
| Calretinin | Focal Positive |
| WT1 | Focal Positive (nuclear staining) |
| D2-40 | Focal Weak Positive |
| Desmin | Negative |
| Myogenin | Negative |
| Smooth muscle actin | Focal Positive |
| Smooth muscle myosin | Focal Positive |
| TLE-1 | POSITIVE (nuclear staining) |
| CD34 | Focal Positive |
| CD31 | Negative (background vessels positive) |
| BAF47 (INI1) | POSITIVE (for nuclear staining) |
| ALK-1 | Negative |
| DOG1 | Negative |
| Ki-67 | Low to moderate proliferative fraction |

The following immunostains were performed for scientific interest, at no charge to the patient, with results in the neoplastic cells as follows:

| | |
|---|---|
| Chromogranin | Negative |
| Synaptophysin | Negative |

### FISH testing for *SYT* (18q11.2) rearrangement for Synovial Sarcoma

### Results: Negative

ProPath Services, LLP · 8267 Elmbrook Drive, Suite 100 · Dallas, TX 75247
(214) 638-2000 or (800) 258-1253 · Fax: (214) 237-1731
www.propath.com · cary.buresh@propath.com

MURPHY, THOMAS G.

Page 3 of 4

No evidence of an *SYT* (18q11.2) gene rearrangement by fluorescence in situ hybridization (FISH).

(16)

**Testing Summary:**

Fluorescence in situ hybridization (FISH) of DNA probe set (Vysis, Inc.) for each end of the *SYT* gene in chromosome band 18q11.2, which is rearranged by the (X;18) translocation, was performed on interphase nuclei from this specimen. No evidence of an *SYT* gene rearrangement was observed in 200 nuclei examined.

This FISH test was developed and its performance characteristics determined by the ProPath Cytogenetics Laboratory, as required by the CLIA '88 regulations. This probe set has not been cleared or approved for specific uses by the U.S. Food and Drug Administration. The FDA has determined that such clearance or approval is not necessary. This test is used for clinical purposes.

Unless specified otherwise above, the quality of the H&E and any other special stains performed at ProPath (AFB, PAS, etc) is satisfactory, and any positive or negative controls react appropriately. Photographs that may be included in this report represent only selected aspects of the pathologic examination, and should not be considered diagnostic by themselves.

FDA required disclaimer

If any immunohistochemical, immunofluorescence, or in-situ hybridization tests are included in this report, these tests were developed and their performance characteristics determined by ProPath Laboratory. They have not been cleared or approved by the U.S. Food and Drug Administration (FDA). The FDA has determined that such clearance or approval is not necessary. These tests are used for clinical purposes. They should not be regarded as investigational or for research. ProPath Laboratory is certified under the Clinical Laboratory Improvement Amendments of 1988 (CLIA) as qualified to perform high complexity clinical laboratory testing.

College of American Pathologists (CAP)-required information for predictive/prognostic markers.

1. Type of specimen fixation and processing: Determined by the referring laboratory. Unless otherwise specified above in the report, material represents neutral buffered formalin (NBF)-fixed paraffin-embedded tissue routinely processed in the referring laboratory. 2. Detection system used at ProPath: Peroxidase-conjugated polymer. 3. Clones used: ER - SP1 (NeoMarkers); PR - 16 (Novocastra); Her-2/neu - SP3 (NeoMarkers). EGFR - 2-18C9 (pharmDx, Dako) or 31G7 (Zymed); Ki-67 - SP6 (NeoMarkers); p53: DO-7 (ImmunoVision); Information on other clones available by phone at 214 638-2000, ext. 2037. 4. Criteria for positive result: ER and PR: >1% of tumor cells with nuclear staining; For HER2 overexpression by immunohistochemistry (IHC): POSITIVE FOR HER2 overexpression is a 3+ IHC result, defined as uniform intense membrane staining in >30% of the invasive tumor cells. EQUIVOCAL FOR HER2 overexpression is a 2+ IHC result, defined as complete membrane staining that is either nonuniform or weak in intensity, but with obvious circumferential staining in at least 10% of invasive tumor cells. NEGATIVE FOR HER2 overexpression is a 0 or 1+ IHC result, defined as no staining or weak, incomplete membrane staining in any proportion of tumor cells. HER2 testing at ProPath is done in compliance with the American Society of Clinical Oncology / College of American Pathologists Guideline Recommendations for HER2 testing in breast cancer, as reported in Arch Pathol Lab Med 131:18-43, Jan 2007.

V 18710855
M 687303

MURPHY, THOMAS G.

ProPath Services, LLP · 8267 Elmbrook Drive, Suite 100 · Dallas, TX 75247
(214) 638-2000 or (800) 258-1253 · Fax: (214) 237-1731
www.propath.com · cary.buresh@propath.com

Page 4 of 4

RUN DATE: 12/04/09
RUN TIME: 0906

Texas Health Arlington Memorial *LAB*
800 W. Randol Mill Rd. Arlington, TX 76012
DISCHARGE SUMMARY FOR ARCHIVE
PCI User: GOOGW    Lab Database: LAB.ARL



Patient: MURPHY, THOMAS G          #V00018781336     (Continued)

### CLINICAL HISTORY

RIGHT LUNG MASS, RIGHT PLEURAL EFFUSION, MESOTHELIOMA          $509-7165$

### GROSS DESCRIPTION

Two specimens are received.

Specimen A is labeled "right parietal pleural mid lateral mass" and consists of a 2.2 x 1.8 x 1.0 cm, 3 gm fragment of soft, pink-red tissue mass with attached muscle.  The outer margins are inked with black dye.  The specimen is closely sectioned to reveal a well-circumscribed 1.7 cm mass with a soft friable center with focal areas of hemorrhage. The entire specimen is submitted in blocks A1-A3.

ml:jp 11/03/09

Specimen B is received fresh labeled as "right pleural fluid" and consists of approximately 2.9 L of dark red-brown, thick, opaque fluid.

One (1) cell block, one (1) cytospin, and one (1) ThinPrep are prepared for microscopic examination.

sc:tlh 11/03/09

### MICROSCOPIC DESCRIPTION

Examination of the right pleural mass (Specimen A) reveals the presence of a malignant neoplasm which exhibits both epithelioid and sarcomatoid features.  The neoplasm is characterized by a dense proliferation of cells which are present in diffuse sheets.  These cells show oval to spindled nuclei with ample eosinophilic cytoplasm and conspicuous nucleoli.  Mitotic activity is readily identified, and there are foci of confluent necrosis.  Focal vascular invasion is identified.  The neoplasm shows involvement of fibrous tissue but does not show extension into surrounding skeletal muscle.  In addition, the neoplasm does not extend to the inked outer surgical margins.

Examination of pleural fluid (Specimen B) reveals a lymphocytic infiltrate, along with scattered macrophages.  There are rare atypical cells consistent with previously diagnosed mesothelioma.

Texas Health Arlington Memorial *LAB*
800 W. Randol Mill Rd. Arlington, TX 76012
DISCHARGE SUMMARY FOR ARCHIVE
PCI User: GOOGW   Lab Database: LAB.ARL

Patient: MURPHY, THOMAS G              #VG0018781336     (Continued)

## COMMENTS

The current findings confirm the previous needle biopsy results of sarcomatoid mesothelioma (S09-6662).

## PATHOLOGIC DIAGNOSIS

Specimen A - Right parietal pleural mid lateral mass (excision):
    SARCOMATOID MESOTHELIOMA.

Specimen B - Right pleural fluid (cell block, cytospin, and ThinPrep):
    RARE ATYPICAL CELLS PRESENT.

JTW:jp D&T 11/04/09

    Dictated by: Worrell,J Trace

Signed _____(signature on file)_____ Worrell,J Trace 11/04/09

Legend: L=Low   H=High   P=Critical   *=New Work   @=Reference Lab
PATIENT:MURPHY,THOMAS G

TEXAS HEALTH ARLINGTON MEMORIAL HOSPITAL
800 WEST RANDOL MILL ROAD
ARLINGTON, TEXAS 76012

NAME: MURPHY,THOMAS G
ROOM#: CCU-17
ADMISSION: 10/30/09
DISCHARGE:
PT LOCATION: CCU
PHYSICIAN: Norcross,James F

ACCT. #: V00018781336
MR. #: M000687303

## OPERATIVE REPORT

JOB NUMBER: 62596

DATE OF PROCEDURE: 11/03/09

PREOPERATIVE DIAGNOSIS:
SARCOID MESOTHELIOMA, RIGHT LUNG AND PLEURAL SPACE WITH RECURRENT
MASSIVE RIGHT PLEURAL EFFUSION.

POSTOPERATIVE DIAGNOSIS:
SARCOID MESOTHELIOMA, RIGHT LUNG AND PLEURAL SPACE WITH RECURRENT
MASSIVE RIGHT PLEURAL EFFUSION.

PROCEDURE PERFORMED:
1.  RIGHT POSTEROLATERAL THORACOTOMY WITH DRAINAGE OF EFFUSION,
    EXCISION OF PLEURAL MASS, EXPLORATION OF CHEST, TALC
    PLEURODESIS.
2.  INTERCOSTAL NERVE BLOCKS AT THE INSERTION OF DUAL CATHETER
    ACCUFUSER PAIN PUMP.

SURGEON:
James F Norcross, MD

ASSISTANT:
Jackie Elson, PA-C

ANESTHESIOLOGIST:
Lee Stout, MD

HISTORY:
This 77-year-old male was recently found to have a sarcoid
mesothelioma in his right lower lung. It measured 10 x 12 cm on
CT scan. There were additional satellite lesions with pleural
attachment and diaphragmatic attachment. There was no obvious
hilar or mediastinal adenopathy. He did have massive right
pleural effusion and worsening dyspnea. He had weight loss. He
was referred for surgical pleurodesis. Given the sarcomatoid
features and the large mass, possible resection was considered
for debulking if this could be accomplished with acceptable
morbidity. This was discussed in detail with the patient and his
family. Informed consent was obtained.

DESCRIPTION OF PROCEDURE:
The patient was brought to the operating room where after
induction of satisfactory general anesthesia, the patient was
intubated with an endotracheal tube and a right sided blocker

Texas Health Arlington Memorial *PCI* (PCI: OE Database ARL)

DRAFT COPY

Run: 12/04/09-09:05 by Blakely,Gwendolyn F

Page 1 of 3

TEXAS HEALTH ARLINGTON MEMORIAL HOSPITAL
800 WEST RANDOL MILL ROAD
ARLINGTON, TEXAS 76012

NAME: MURPHY,THOMAS G
ROOM#: CCU-17
ADMISSION: 10/30/09
DISCHARGE:
PT LOCATION: CCU
PHYSICIAN: Norcross,James F

ACCT. #: V00018781336
MR. #: M000687303

### OPERATIVE REPORT

layers with running 0 Vicryl subcutaneous tissue and skin with 2-0 Vicryl and 4-0 subcuticular Vicryl. Dermabond and sterile dressings were applied. Chest tubes were connected to underwater seal.

The patient was taken directly to the CCU with constant blood pressure and EKG monitoring in serious but stable condition. He remained intubated. He tolerated the procedure well. There are no apparent complications. All counts were correct. He received no transfusions.

James F Norcross, MD

TPRN13
D: 11/03/2009 1325
T: 11/03/2009 2114

cc: James F Norcross, MD
    Scott Fleischauer, M.D.
    Michele A Burzynski, M.D.
    Jack G. Gilbey, M.D.

MURPHY, THOMAS G. (Rec 7/6/10)



| S09-6602 MURPHY,THOMAS CE RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-6962 MURPHY,THOMAS C CE RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-6241 MURPHY,THOMAS B CB RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-6241 MURPHY,THOMAS G A RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-6662 MURPHY,THOMAS EXTRA ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-6662 MURPHY,THOMAS C EXTRA ARLINGTON MEM HOSP ARLINGTON TEXAS |

  

| S09-7165 MURPHY,THOMAS C A1 RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-7165 MURPHY,THOMAS B A1 RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-7165 MURPHY,THOMAS G A2 RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-7165 MURPHY,THOMAS G A2 RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-7165 MURPHY,THOMAS G A3 RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-7165 MURPHY,THOMAS C A3 RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-7165 MURPHY,THOMAS B CB RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS | S09-7165 MURPHY,THOMAS B CB RECUT ARLINGTON MEM HOSP ARLINGTON TEXAS |





# TEXAS PULMONARY & CRITICAL CARE CONSULTANTS, P.A.

**Arlington - North**
Joseph Austin, Jr., MD., FCCP
Jack C. Gilboy, Jr., MD., FCCP
Luis F. Guerra, MD., FCCP
Mitchell C. Kaplinger, MD., FCCP
David H. Hwang, MD., FCCP
Tony H. Seif, M.D., FCCP
911 C Medical Center Drive
Arlington, Texas 76012
(817) 461-0201 (Metro)
(817) 861-1365 Fax

**Arlington - South**
R. Duane Dilley, M.D., FCCP
Ehan Nguyen, M.D.
601 Omega Drive, Suite 206
Arlington, Texas 76014
(817) 465-5381
(817) 465-6336 Fax

**Bedford**
Gary L. Jones, M.D., FCCP
Jason T. Sisinski, M.D., FCCP
Donal J.L. Washington, Jr., MD.
1604 Hospital Parkway, Suite 403
Bedford, Texas 76022
(817) 354-0545
(817) 354-8157 Fax

**Burleson - Huguley**
Derejo S. Ayo, M.D.
Henry S. Combs Jehan, MD., FCCP
11797 S. Freeway, Suite 222
Burleson, Texas 76028
(817) 293-1900
(817) 293-4930 Fax

**Fort Worth - Medical District1**
John R. Burk, MD., F ACP
Stuart D. McDonaId, MD., FCCP
Karim F. Rasuli, MD., FCCP
1521 Cooper Street
Fort Worth, Texas 76104
(817) 336-5864
(817) 336-2159 Fax

**Fort Worth - Medical District2**
Steven Q. Davis, M.D.
Roger Glassm, M.D., FCCP
David S. Haraway, M.D.
John T. Fender, Jr., M.D., FCCP
1201 Firmount Avenue
Fort Worth, Texas 76104
(817) 335-5288
(817) 338-0927 Fax

**Fort Worth - Southwest**
Kevin G. Connelly, M.D., FCCP
Huy X. Duong, D.O., FCCP
David Maldonado, III, M.D.
6100 Harris Parkway, Suite 285
Fort Worth, Texas 76132
(817) 263-5864
(817) 263-5791 Fax

**Grapevine**
R. L. "Jim" Carb, Jr., M.D., FCCP
Timothy G. Schroeder, MD., FCCP
1600 West College, Suite 110
Grapevine, Texas 76051
(817) 424-5959 (Metro)
(817) 416-7441 Fax

**Mansfield**
John L. Tru, M.D., FCCP
2800 E. Broad Street, Suite 314
Mansfield, Texas 76063
(817) 453-8883
(817) 453-8894 Fax

**North Richland Hills**
David R. Harraman, M.D., FCCP
Madhu S. Kalapura, M.D.
4375 Booth Calloway, Suite 307
North Richland Hills, Texas 76180
(817) 284-4343
(817) 590-4393 Fax

**Murphy, Thomas**                                        Account # 182421
October 23, 2009                                                    Page 1

## FOLLOW-UP VISIT

HISTORY OF PRESENT ILLNESS: Mr. Murphy is a 77-year-old gentleman who had a right lower chest mass. It was unusual necrotic looking mass and was even considered to possibly be in the liver or pleural space. However, bronchoscopy and thoracentesis were unrevealing. He had a needle biopsy and the pathology was sent to an outside consultation and I have called many times and as of yet have not heard final results.

REVIEW OF SYSTEMS: The patient has had increased shortness of breath over the past few weeks. He has intermittent shoulder pain. He has had cough but no sputum production. He continues to have poor appetite and weight loss. No hearing loss, sinus or nasal congestion. No nausea, vomiting, diarrhea, hematochezia, hematemesis, melena, dysuria or hematuria.

CURRENT MEDICATIONS: Flomax, Zocor, Niaspan, Cosopt, Xalantan, Allergan, Synthroid, Zofran, Spiriva, Zyrtec, aspirin, gabapentin, Lidoderm patches and Ventolin p.r.n.

PHYSICAL EXAMINATION: Blood pressure 108/60, pulse 100, respirations 22, oxygen saturation 90% on room air and temperature is 97.6. General, Mr. Murphy is in no acute distress. There is no adenopathy. Oral examination shows no bleeding or lesions. Ears are normal. Neck is supple. No jugular venous distention. No carotid bruits or adenopathy. Chest – Dull diminished breath sounds at the right base but he has symmetrical chest expansion with no use of accessory muscles. Cardiac examination without murmurs or gallops. Abdominal examination shows no masses, tenderness or organomegaly. Extremities show no clubbing, cyanosis, edema. The patient is awake and alert with good memory.

LABORATORY DATA: Chest x-ray showed opacification of the entire right hemithorax consistent with a large right pleural effusion.

I spoke to the pathology department many times today and ultimately I got a call back from them and all stains suggested mesothelioma.

IMPRESSION:
1. Dyspnea with increasing right pleural effusion.
2. Right chest mass probably mesothelioma.
3. History of hypercholesterolemia.
4. Benign prostatic hypertrophy.
5. Osteoporosis.
6. History of depression.
7. Borderline diabetes.
8. Erectile dysfunction.

PROCEDURE: After benefits and risk were discussed, 1% Xylocaine and sterile prep and drape we did a diagnostic thoracentesis and removed approximately 2.5 liters of sanguinous fluid was removed from the right pleural space without difficulty.



# TEXAS PULMONARY & CRITICAL CARE CONSULTANTS, P.A.

Murphy, Thomas                                            Account # 182421
October 23, 2009                                          Page 2

The patient improved in terms of dyspnea and was able to cough and raise sputum which he was unable to do before. The fluid was sent for analysis.

PLAN: I spoke with the patient and his relative and they would like for the patient to remain out of the hospital. We probably would not do anything very meaningful in the hospital until we get the final pathology back. I spoke with Dr. Burzynski and he has an appointment to see her in 72 hours and a chest x-ray will be done. As I told the patient, I am on call this weekend and if needed we could admit him if he has increased dyspnea or new symptoms.

*David H. Plump, M.D.*

David H. Plump, M.D.
*Electronically signed but not read to avoid delay.*

DHP: skm                                                  d: 11/03/2009 t: 11/03/2009
cc: Dr. Burzynski



## TEXAS HEALTH ARLINGTON MEMORIAL RADIOLOGY REPORT

800 West Randol Mill Road
Arlington, Texas 76012
(817)960-6270 * Fax (817)960-6350

```
Name: MURPHY, THOMAS G
Phys: Plump, David H
DOB: 12/10/1931 Age: 77        Sex: M
Acct: V00018702415 Loc: UNK
Exam Date: 10/08/2009 Status: UNK
Radiology No:
Unit No: M000687303
```

EXAM#      TYPE/EXAM                    RESULT
002117368 RADMRI/MRI CHEST W/O & W CONTRA

EXTENDED MRI OF THE CHEST WITH AND WITHOUT CONTRAST

CLINICAL HISTORY: Right lower lobe mass.

TECHNIQUE: Routine multiplanar, multi-sequence imaging of the chest
was performed before and after IV administration of 15 cc of OptiMARK
gadolinium contrast. Sequences include T2, T2 fat sat, and T1 pre-and
postcontrast fat sat sequences in multiple planes. 647 total images
obtained. Comparison is made to a report of a previous outside CT
scan describing a large right lower lobe mass equivocal to its
involvement of the diaphragm or liver.

FINDINGS: There is a very large mass involving the right lower chest
measuring 14 x 13 x 11 cm. This is a heterogeneous enhancing mass with
areas of central necrosis. Presumably this is parenchymal arising from
the right lower lobe. This is somewhat difficult to determine due to
its very large size compared to the minimal remaining collapsed
adjacent lower lobe. Much of its circumference it is surrounded by
pleural fluid. No doubtful comet is conceivable that this is a
pleural origin lesion. There is a large associated pleural effusion.
This is a considerably space-occupying effusion bulging over the
midline just anterior to the spine at the azygos esophageal recess.
There is complete collapse of the right lower lobe and partial
collapse of the middle and upper lobes. This is a malignant effusion
with extensive thickening and enhancement of the pleural surfaces.
Multiple additional pleural nodules are present. The largest measures
4 cm in the posterior sulcus. There are multiple additional smaller
enhancing pleural nodules. Several centimeters above the inferior
margin of the large mass abut the dome of the right hemidiaphragm.
The diaphragm itself is a thin structure and not inherently visible.
Due to the length of involvement, I suspect local invasion. There is
no evidence to suggest invasion of the liver parenchyma, however. The
mass abuts the right infrahilar region displacing vessels superiorly
and anteriorly. There is no definite separate hilar adenopathy. No
mediastinal or contralateral hilar adenopathy is evident. Heart size
is normal. Other than volume loss, the left hemithorax is
unremarkable. Visible upper abdomen is unremarkable.

IMPRESSION:  *Very large right lower lobe mass likely revisions
bronchogenic carcinoma. There are multiple pleural metastases with a
large malignant effusion. It abuts several centimeters of the dome of
the diaphragm and involvement is likely. There is no visible invasion
of the liver, however.*

(3B)

**TEXAS HEALTH ARLINGTON MEMORIAL**
**RADIOLOGY REPORT**

800 West Randol Mill Road
Arlington, Texas 76012
(817)960-6270 * Fax (817)960-6350

```
Name: MURPHY,THOMAS G
Phys: Plump,David H
DOB: 12/10/1931 Age: 77        Sex: M
Acct: V00018702415 Loc: UNK
Exam Date: 10/08/2009 Status: UNK
Radiology No:
Unit No: M000687303
```

EXAM#      TYPE/EXAM                           RESULT
002117368 RADMRI/MRI CHEST W/O & W CONTRA
      <Continued>


*Electronically Signed by: Michael McCrary, M.D. on 10/8/2009 4:27 PM*


                    -------------------------------
                    Reported By: MCCRARY,MICHAEL MD


CC:

Technologist: BOZKURTOGLU,SEHNAZ
Transcribed Date/Time: 10/08/2009 (1638)
Transcriptionist: ISCRIPT
Printed Date/Time: 12/04/2009 (0952)    Batch No: 7916

PAGE 2            Signed Report Printed From PCI

| | |
|---|---|
| COUNTY OF TARRANT, | } |
| | } |
| STATE OF TEXAS | } |

## AFFIDAVIT OF THOMAS G. MURPHY

BEFORE ME, the undersigned authority, personally appeared Thomas G. Murphy who swore on oath that the following facts are true:

"My name is Thomas G. Murphy. I am of sound mind, over the age of eighteen (18) years of age, have never been convicted of a felony and am competent in all respects of making this affidavit. I have personal knowledge of the facts stated herein. All statements made herein are true and correct.

My home address is 1812 Old Oak Drive, Arlington, Texas 76012 and my Social Security Number is 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.

I have been diagnosed with malignant mesothelioma and have been advised by my doctors that this cancer is caused by asbestos exposure.

During my working career, I worked at numerous jobs where I breathed the dust from the manipulation and clean-up of asbestos containing products on a frequent and regular basis including, but not limited to, the following jobs during the approximate time periods referenced below:

1.  **Phillips Petroleum facility in McGregor, Texas** where I was employed by Phillips Petroleum as an instrument technician from approximately October 1954 through December 1957. At this facility, I checked and maintained instruments throughout the plant on numerous types of machinery and equipment. Throughout my employment here I frequently worked in close proximity to pipefitters, insulators and other trades as they installed, removed, cut, sawed, grinded and cleaned-up pipe-covering,

block insulation, insulating cement, gaskets and packing on steam lines and various steam system associated equipment.

2. **Chance Vought Corporation facility in Grand Prairie, Texas** where I was employed by Chance Vought as an instrument technician from approximately December 1957 through January 1959. At the Chance Vought facility I again I checked and maintained instruments throughout the plant on numerous types of machinery and equipment. Throughout my employment here I frequently worked in close proximity to pipefitters, insulators and other trades as they installed, removed, cut, sawed, grinded and cleaned-up pipe-covering, block insulation, insulating cement, gaskets and packing, among other types of products, on steam lines, boilers and steam system related equipment.

3. **American Cyanamid Plant in Fort Worth, Texas** where I was employed by American Cyanamid as an instrument technician from approximately January 1959 continuously through to December 1982. At American Cyanamid I again checked and maintained instruments throughout the plant on numerous types of machinery and equipment. Throughout my employment here I frequently worked in close proximity to pipefitters, insulators and other trades as they installed, removed, cut, sawed, grinded and cleaned-up pipe-covering, block insulation, insulating cement, gaskets and packing, among other types of products, on steam lines, boilers and steam system related equipment. By 1980 I had been placed in a supervisory position. I am not aware of having any exposures to asbestos at American Cyanamid after December 1980.

I also did my own home remodeling work during 1962 or 1963 on my house at the time located at 1913 Sanford, Arlington, Texas. During the 1962-1963 project I made part of the garage into an interior room of the house and the remaining garage portion became a tool shop and work space. This work required me to frame out the wall, hang dry-wall and mix, apply and sand joint compound to the walls. I also installed floor tile during this project. I did not wear a mask during this work.

The types of asbestos products and brand names of asbestos products that I recall working with or in close proximity to are identified in Exhibit "A" to this affidavit which is incorporated herein in full by reference.

FURHTER AFFIANT SAYETH NOT.


Thomas G. Murphy
Affiant

SIGNED under oath before me on January 5, 2010.


Notary Public, State of Texas





## EXHIBIT "A"

| Asbestos Product Type | Brand Name | Worked with | Worked Around |
|---|---|---|---|
| Pipe-covering | unknown | | worked around |
| Block Insulation | unkown | | worked around |
| Insulating Cement | unkown | | worked around |
| Boilers | unknown | worked with | also worked around |
| Gaskets | unknown | | worked around |
| Packing | unknown | | worked around |
| Joint Compound | unknown | worked with | |
| Floor Tile | unknown | worked with | |

%JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
See Attached

**DEFENDANTS**
See Attached

**(b)** County of Residence of First Listed Plaintiff  **Tarrant County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Ben K. DuBose, DuBose Law Firm, PLLC
5646 Milton Street, Suite 321
Dallas, Texas 75206; 214-389-8199 telephone

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☒ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332

Brief description of cause:
asbestos personal injury product liability

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ IN EXCESS
OF $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
PENDING OR CLOSED:

(See instructions)

JUDGE _____  DOCKET NUMBER _____

DATE  8/31/11

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**PLAINTIFFS:**

Tango, Carol L.

Egan, Dee Anne

Murphy, Norman L.

Murphy, Michael E.

**DEFENDANTS:**

AMERICAN CYANAMID COMPANY *n/k/a* WYETH HOLDINGS COPORATION

ASHLAND, INC. (Individually and as successor-in-interest to Hercules Inc.)

CHAMPLAIN CABLE CORPORATION *f/k/a* HERCULES, INC., (Individually and as successor-in-interest to Haveg Industries, Inc.)

CYTEC INDUSTRIES, INC. (individually and as successor-in-interest to AMERICAN CYANAMID COMPANY n/k/a WYETH HOLDINGS CORPORATION

HERCULES, INCORPORATED

PFIZER, INC., (Individually and as successor-in-interest to WYETH HOLDINGS CORPORATION f/k/a American Cyanamid Company)

RAPID-AMERICAN CORPORATION, INDIVIDUALLY AND as sii to Glen Alden Corporation as sii to Philip Carey Manufacturing Corporation

ZURN INDUSTRIES, LLC (Individually and as successor-in-interest to Erie City Iron Works)

WYETH HOLDINGS COPORATION *f/k/a* AMERICAN CYANAMID COMPANY